UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

MATTHEW WILKINSON,

    Plaintiff,

v.

PASSPORT LABS, INC. et al.,

    Defendants.

Case No. 22-10714
Honorable Laurie J. Michelson

**OPINION AND ORDER GRANTING
PASSPORT LABS' MOTION TO DISMISS [13]**

Earlier this year, Matthew Wilkinson parked his car in downtown Detroit at the 215 W. Elizabeth Parking Lot, where he had parked before. (ECF No. 9, PageID.28.) An attendant waved him into the lot and collected a $20 parking fee, and another attendant directed him into a spot. (*Id.*)

Once Wilkinson returned to his car, he found this parking ticket on the windshield:

 

(ECF No. 9-1, PageID.36.) As can be seen, it cited him for not having a permit to park in the lot. (*Id.*) The ticket assessed a "fine" of $50, which would increase to $100 if the ticket was not paid within 14 days. (*Id.*) On the back, the ticket stated that if it is paid by mail, it should be addressed to "Olympia Development Authority" located at 2211 Woodward Ave, Detroit, MI 48201. (ECF No. 9-1, PageID.37.) This address is the site of the Fox Theater and Little Caesars' corporate office. The back also lists a phone number and website that can be used to pay the ticket. (ECF No. 9-1, PageID.37.) Wilkinson says that Passport Labs created and issued the parking ticket he received and that it operated the payment collection website and phone number. (ECF No. 9, PageID.30.)

Wilkinson thinks the ticket is deceptive in a few ways. For one, the ticket says to send payments to "Olympia Development Authority," but, according to Wilkinson, "[t]here is no such entity formed, known, or existing as the 'Olympia Development Authority.'" (*Id.*) Wilkinson further alleges that Passport, Olympia Development of Michigan, and ODM Parking (or another unknown Olympia company) used the name "Olympia Development Authority" to give the false impression that a municipal, governmental, or law enforcement agency was issuing the tickets and that the tickets initiated legal process. (*Id.*) Wilkinson does not contend that he paid the parking ticket and has not alleged that anyone contacted him about the unpaid parking ticket after he received it.

By virtue of having received the ticket, Wilkinson filed this purported class action under the Fair Debt Collection Practices Act. He alleges that all defendants

2

violated the FDCPA's prohibition on using false, deceptive, or misleading representations (Count I) and its prohibition on using unfair or unconscionable means to collect a debt (Count II). He also sues only Passport for furnishing a deceptive form under the FDCPA (Count III).

In response, Passport moved to dismiss the complaint.[1] (ECF No. 13.) After reviewing the complaint, the Court also issued a show-cause order directing Wilkinson to explain why he has standing to bring this lawsuit. (ECF No. 21.)

Given the adequate briefing and relevant allegations, the Court considers the motion and the show-cause response without further argument. *See* E.D. Mich. LR 7.1(f). And for the reasons set forth below, the Court will GRANT the motion to dismiss.

## I. Standing

The Court begins, as it must, with subject-matter jurisdiction. *See Am. Telecom Co. v. Republic of Lebanon*, 501 F.3d 534, 537 (6th Cir. 2007) ("Subject matter jurisdiction is always a threshold determination.").

One of the essential requirements of subject-matter jurisdiction is standing. The Court is "obligated to address a party's lack of standing even if the parties fail to raise the issue on their own." *Langfan v. Goodyear Tire & Rubber Co.*, 529 F. App'x 460, 462 (6th Cir. 2013); *see also Donovan v. FirstCredit, Inc.*, 983 F.3d 246, 250 (6th Cir. 2020) ("It is well established that the court has an independent obligation to

---

[1] Olympia Development and ODM Parking also moved to dismiss (ECF No. 14), which the Court will address in a separate opinion.

assure that standing exists." (quoting *Summers v. Earth Island Inst.*, 555 U.S. 488, 499 (2009))). Accordingly, the Court issued a show-cause order, which specifically questioned whether Wilkinson had pled a concrete injury. (ECF No. 21, PageID.180–181.)

Article III standing requires an injury that is concrete, particularized, and actual or imminent. *See Friends of the Earth, Inc. v. Laidlaw Env't. Servs.*, 528 U.S. 167, 180–81 (2000); *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560–61 (1992). The Supreme Court recently made clear that "Congress may create causes of action for plaintiffs to sue defendants who violate [certain] legal prohibitions or obligations. But under Article III, an injury in law is not an injury in fact." *TransUnion LLC v. Ramirez*, 141 S. Ct. 2190, 2205 (2021). "Only those plaintiffs who have been concretely harmed by a defendant's statutory violation may sue that private defendant over that violation in federal court." *Id.*

Wilkinson now argues, but did not plead, that the parking ticket he received caused him injury in the form of wasted time, "stress, fear, anger, and frustration." (ECF No. 22, PageID.188.) Wilkinson attaches a declaration similarly stating that the fine caused "distress, fear and frustration" and that he made "numerous" calls to resolve the ticket which "cost [him] important personal and professional time as to [his] family and work-breaks and caused [him] losses." (ECF No. 22-2, PageID.195.)

Both tangible and intangible injuries can be concrete, i.e., "real . . . not abstract[.]" *Garland v. Orlans, PC*, 999 F.3d 432, 436 (6th Cir. 2021). So Wilkinson is correct that he need not have suffered financial harm (from paying the ticket, for

4

example) to have standing. Where a plaintiff claims that a statutory violation resulted in a concrete intangible injury (as Wilkinson is now trying to do here), the Court should rely on congressional judgment and history to determine if the statutory violation rises to the level of a traditional legal harm. *See Ward v. Nat'l Patient Acct. Servs. Sols.*, 9 F.4th 357, 362 (6th Cir. 2021). This is true whether the plaintiff contends that the statutory violation itself is sufficient to establish a concrete intangible injury, or whether a concrete intangible injury "flowed from the statutory violation." *Id.* at 362–63; *see also Garland*, 999 F.3d at 436–37 ("When trying to determine whether an intangible injury qualifies, *Spokeo* says that we should look to history and congressional judgment."). No matter the theory, courts have warned that while Congress may elevate harms that existed in common law, "it may not simply enact an injury into existence, using its lawmaking power to transform something that is not remotely harmful into something that is." *Hagy v. Demers & Adams*, 882 F.3d 616, 622 (6th Cir. 2018).

Start with Wilkinson's argument that the alleged statutory violations themselves are a concrete injury because they have a close relationship to the traditional common-law injuries recognized by negligent or false misrepresentation claims. *See Garland*, 999 F.3d at 437. But Wilkinson's allegations here do not resemble "a harm traditionally regarded as providing a basis for a lawsuit." *See Ward*, 9 F.4th at 362 (citing *TransUnion LLC v. Ramirez*, 141 S. Ct. 2190, 2204 (2021)).

First, a necessary component of a misrepresentation claim is reliance. *Alfieri v. Bertorelli*, 813 N.W.2d 772, 775 (Mich. Ct. App. 2012). But Wilkinson did not

5

plausibly rely on any representation made on the ticket. He did not pay the fine nor did he plead anything else that would constitute reliance. So even if the ticket did suggest that Wilkinson violated parking ordinances or that he owed a fine under the law, he has not alleged any form of reliance on those representations. Thus, Wilkinson's alleged intangible harm does not have "a close relationship to a harm that has traditionally been regarded as providing a basis" for a false or negligent misrepresentation lawsuit. *See Garland*, 999 F.3d at 437.

Wilkinson also did not suffer pecuniary loss, which is the typical remedy for negligent or fraudulent misrepresentation. *See* Restatement (Second) of Torts § 549 ("The recipient of a fraudulent misrepresentation is entitled to recover as damages in an action of deceit against the maker the pecuniary loss to him of which the misrepresentation is a legal cause[.]"); *see also Ric-Man Construction, Inc. v. Neyer, Tiseo & Hindo Ltd.*, No. 329159, 2017 WL 188049, *5 (Mich. Ct. App. Jan. 17, 2017) (relying on the Restatement, which, in turn, provided that liability for negligent misrepresentation was for "pecuniary loss"). For that reason as well, Wilkinson does not plead a claim that has a close relationship to common-law injuries involving misrepresentation. *See Trichell v. Midland Credit Mgmt., Inc.*, 964 F.3d 990, 998 (11th Cir. 2020) ("By jettisoning the bedrock elements of reliance and damages, the plaintiffs assert claims with no relationship to harms traditionally remediable in American or English courts.").

Wilkinson also seems to argue that certain concrete injuries "flowed from the statutory injury." *See* Ward, 9 F.4th at 363. But Wilkinson's bare allegations of

6

"stress, fear, anger, and frustration" do not amount to a concrete injury. The Sixth Circuit has found that "[s]ome forms of anxiety or emotional harm are cognizable under the common law, but others are not. And this distinction appears to turn on both the defendant's conduct giving rise to the anxiety and the anxiety's severity." *Garland*, 999 F.3d at 440. Wilkinson notes that the common law has "long designated it a compensable injury when intentionally inflicting distress by extreme and outrageous conduct." (ECF No. 22, PageID.187.) But intentional infliction of emotional distress requires "extreme and outrageous" conduct which "describes a very small slice of human behavior." *See Garland*, 999 F.3d at 440 (quoting Restatement (Third) of Torts: Physical & Emotional Harm § 46 cmt. a). A "bare procedural violation," such as the one asserted by Wilkinson in his complaint, "does not fit on that small slice." *Id.*

In his amended complaint, Wilkinson merely describes the events leading up to him receiving the parking ticket, what the parking ticket said, and why he believes this violated the FDCPA. (ECF No. 9, PageID.28–30.) There is nothing detailing the harm he suffered apart from the FDCPA violation. And though his declaration states the parking ticket caused distress, fear, and frustration because he was "[b]eing falsely accused by what was thought to be a government agency to have broken the law to the point of being fined" and because the ticket "demanded . . . such a substantial amount of money combined with doubling penalty" (ECF No. 22-2, PageID.195), Wilkinson does not describe an injury that was caused by "extreme and outrageous" conduct. Simply put, placing a parking ticket on Wilkinson's windshield

7

(while he was not there) is not extreme and outrageous conduct even if the parking ticket was undeserved. The ticket cites no law and does not threaten any legal process. (ECF No. 9-1, PageID.36–38.) And even if the ticket did "falsely accuse" Wilkinson of breaking the law, Wilkinson makes no suggestion that the person who issued the ticket knew that or that such person *intentionally* inflicted any harm. Further, Wilkinson's description of his emotional harm "says nothing about severity." *See Garland*, 999 F.3d at 440. Thus, the harm caused to Wilkinson does not bear a close relationship to the harm that "has traditionally been regarded" as providing a basis for an intentional-infliction-of-emotional-distress claim. *See Garland*, 999 F.3d at 439. So Wilkinson's bare assertion of emotional harm does not rise to the level of a concrete injury.

True, in response to the show-cause order, Wilkinson says that he made "numerous" calls to resolve the ticket which "cost [him] important personal and professional time as to [his] family and work-breaks and caused [him] losses." (ECF No. 22-2, PageID.195.) And, arguably, the loss of time is an Article III injury. *Cf. Thomas v. TOMS King (Ohio), LLC*, 997 F.3d 629, 640 (6th Cir. 2021).

But even if Wilkinson could plead an Article III injury, to date he has not done so. He raises injuries in his declaration and briefs, but as the Court noted, "the amended complaint is devoid of any allegations describing consequences Wilkinson may have faced as a result of Defendants' actions or any actions Wilkinson took in response that could constitute 'concrete' and 'particularized' harm." (ECF No. 21, PageID.181.) To correct this deficiency, Wilkinson asks the Court to grant him leave

8

to again amend the complaint and add the injuries he describes in his declaration as allegations in his complaint. (ECF No. 22, PageID.191.)

The Court declines the invitation because granting leave to amend the complaint would be futile. Though perhaps Wilkinson could add allegations that amount to a concrete injury, the Court finds that Wilkinson would still fail to properly plead a claim against Passport under the FDCPA. *See Banerjee v. Univ. of Tenn.*, 820 F. App'x 322, 329 (6th Cir. 2020) (finding that a motion to amend is futile "where a proposed amendment would not survive a motion to dismiss."). The Court explains why in detail below.

## II. 12(b)(6)

In deciding a motion to dismiss under Rule 12(b)(6), the Court "construes the complaint in the light most favorable" to Wilkinson and determines whether his "complaint 'contain[s] sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face.'" *Heinrich v. Waiting Angels Adoption Servs., Inc.*, 668 F.3d 393, 403 (6th Cir. 2012) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)). Detailed factual allegations are not required to survive a motion to dismiss, *HDC, LLC v. City of Ann Arbor*, 675 F.3d 608, 614 (6th Cir. 2012), but they must "raise a right to relief above the speculative level," *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007). What is plausible is "a context-specific task" requiring this Court "to draw on its judicial experience and common sense." *Iqbal*, 556 U.S. at 679.

Employing this standard, the Court considers two issues: (1) whether Wilkinson plausibly pled that Passport is a debt collector under the FDCPA and (2) whether Wilkinson plausibly pled a deceptive-form claim under the FDCPA.

## A. Debt Collector under the FDCPA

Wilkinson's first two FDCPA claims apply only to debt collectors. Specifically, he brings claims under 15 U.S.C. § 1692e, which states "[a] debt collector may not use any false, deceptive, or misleading representation or means in connection with the collection of any debt[,]" and § 1692f, which states "[a] debt collector may not use unfair or unconscionable means to collect or attempt to collect any debt." Thus, to state a claim under either provision, Wilkinson must plead that Passport is a "debt collector" as defined by the FDCPA. *See White v. Univ. Fidelity, LP*, 793 F. App'x 389, 391 (6th Cir. 2019) ("To prevail on his FDCPA claim, White must establish that . . . Universal Fidelity and Link Revenue are 'debt collectors' as defined by the FDCPA[.]").

Though the FDCPA provides three ways in which a defendant may qualify as a debt collector, both parties seem to agree that only one definition is at issue with respect to Passport: whether Passport is "any person who uses any instrumentality of interstate commerce or the mails in any business the principal purpose of which is the collection of any debts." 15 U.S.C. § 1692a(6); (ECF No. 13, PageID.55; ECF No. 16, PageID.107.)

The Sixth Circuit has held that this statutory definition of debt collector "ties a defendant's 'debt collector' status not to what the defendant specifically did in a

10

given case, but to what the defendant generally does." *Bates v. Green Farm Condominium Assoc.*, 958 F.3d 470, 480–81 (6th Cir. 2020). Here, to echo the *Bates* Court, Wilkinson's complaint "contains almost no well-pleaded allegations about the principal business" of Passport. *See id.* at 481. Other than the conclusory allegation that Passport is a debt collector as defined by the FDCPA, Wilkinson merely alleges that Passport operates the phone number and website listed for payment on the back of the ticket and that Passport supervises "the issuance of tickets," "operation of the payment collection website," and other, unspecified "collection activities" related to the tickets. (ECF No. 9, PageID.29.) This does not suggest that Passport's "principal purpose" is debt collection. Rather, it suggests that Passport runs a parking enforcement business that allows consumers to pay for parking, and that Passport issues notices when they fail to comply with the rules of the lot. *See Schroeder v. Diamond Parking, Inc.,* No. CIV. 12-00378 HG-RLP, 2013 WL 5348472, at *2 (D. Haw. Sept. 17, 2013) ("Diamond Parking's activities are not governed by the FDCPA. Diamond Parking's principal business is parking enforcement activities, and not collection of debts."), *aff'd,* 646 F. App'x 505 (9th Cir. 2016); *Schlegel v. Wells Fargo Bank, NA*, 720 F.3d 1204, 1209 (9th Cir. 2013) ("Rather, the complaint's factual matter, viewed in the light most favorable to the Schlegels, establishes only that debt collection is some part of Wells Fargo's business, which is insufficient to state a claim under the FDCPA."); *see also Bates*, 958 F.3d at 481 ("Perhaps Makower is a debt-collection firm. Yet the pleaded facts must be more than 'merely consistent with' a defendant's liability.").

Where a plaintiff's general allegations about a defendant's business fail to meet the statutory criteria, the Sixth Circuit has not decided whether specific allegations as to what a defendant did in a particular case would "ever suffice to establish a defendant's *general* activities under the Act's debt-collector definition." *Bates*, 958 F.3d at 482; *see also Thompson v. Five Brothers Mortg. Co. Servs. & Securing, Inc.*, 800 F. App'x 369, 371–72 (6th Cir. 2020) ("Even taking Five Brothers' actions in this case as sufficient evidence of the firm's 'principal purpose'—a doubtful proposition—Thompson has not shown that Five Brothers qualifies as a 'debt collector' under the FDCPA."). Much like these Sixth Circuit cases, Wilkinson's specific allegations do not help him better show that Passport's principal purpose is debt collection. As to Wilkinson, Passport engaged in parking enforcement activities—collecting payment, issuing a ticket, and informing Wilkinson of how to pay the ticket. These activities do not suggest that Passport exists to collect on debts—instead, its purpose is to make sure the rules of the lot are followed. So Wilkinson has not plausibly pled that the principal purpose of Passport's business is collecting debts.

This conclusion is in line with the purpose of the FDCPA. Courts have recognized that the FDCPA was designed "to eliminate abusive debt collection practices by debt collectors, to ensure that those debt collectors who refrain from using abusive debt collection practices are not competitively disadvantaged, and to promote consistent state action to protect consumers against debt collection abuses." *Whittiker v. Deutsche Bank Nat. Tr. Co.*, 605 F. Supp. 2d 914, 937 (N.D. Ohio 2009). The Act is intended to target and eliminate specific unfair debt-collection practices,

12

such as telephone calls at unreasonable hours, false representations, threats of violence, and embarrassing communications. *Id.*; *see also Ward v. Nat'l Patient Acct. Servs. Sols., Inc.*, 9 F.4th 357, 362 (6th Cir. 2021) ("[O]ne of the purposes of the FDCPA is to stop abusive debt collection practices that contribute to invasions of individual privacy." (internal quotations omitted)). The only illicit debt collection Passport has allegedly been involved with is placing a parking ticket on Wilkinson's car. Indeed, Wilkinson does not allege that anyone from Passport attempted to or actually contacted him after the ticket was issued to "collect" on the fine, even though he never paid the ticket. This hardly amounts to the harms contemplated by the FDCPA.

True, Wilkinson has alleged that Passport made a false representation by issuing tickets that stated they should be paid to "Olympia Development Authority" when no such entity exists. (ECF No. 9, PageID.30.) But absent from his allegations are the traditional markers of the harm Congress intended the FDCPA to address—abusive debt collection practices.

Perhaps recognizing the dearth of his allegations, Wilkinson argues that all he is required to do at the motion-to-dismiss stage is summarily plead that "Passport Labs is a debt collector as defined by 15 U.S.C. § 1692a(6)." (ECF No. 16, PageID.107.) According to Wilkinson, "[d]iscovery must be first made available to collect evidence from Passport Labs to show it is a debt collector . . . for presentment at the summary judgment or trial stage." (ECF No. 16, PageID.106–107.)

13

Wilkinson misunderstands his burden at this stage. "[T]o survive a motion to dismiss for failure to state a claim under Federal Rule of Procedure 12(b)(6), a complaint must contain either direct or inferential allegations respecting all the material elements to sustain a recovery under some viable legal theory." *Smith v. Gen. Motors LLC*, 988 F.3d 873, 882 (6th Cir. 2021). And Wilkinson must so plead before being entitled discovery. *See New Albany Tractor, Inc. v. Louisville Tractor, Inc.*, 650 F.3d 1046, 1051 (6th Cir. 2011) ("The plaintiff apparently can no longer obtain the factual detail necessary because the language of *Iqbal* specifically directs that no discovery may be conducted in cases such as this, even when the information needed . . . is solely within the purview of the defendant or a third party[.]"); *Ashcroft*, 556 U.S. at 686 ("Because respondent's complaint is deficient under Rule 8, he is not entitled to discovery, cabined or otherwise."). Thus, Wilkinson's conclusory allegation that Passport is a debt collector under the FDCPA is insufficient to survive a motion to dismiss. *See Ashcroft*, 556 U.S. at 679 ("While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations."). And as already established, "liability under the FDCPA can only attach to those who meet the statutory definition of 'debt collector.'" *Thomas v. Daneshgari*, 997 F.Supp.2d 754, 764 (E.D. Mich. 2014) (citing *Montgomery v. Huntington Bank*, 346 F.3d 693, 698 (6th Cir. 2003)). In other words, Wilkinson cannot plausibly assert a FDCPA claim without also plausibly alleging that Passport is a debt collector.

Indeed, in addition to the Sixth Circuit, several other circuits have analyzed whether a plaintiff had plausibly pled that the defendant was a debt collector in this

14

exact manner. *See Montgomery*, 346 F.3d at 695; *Walker v. Pitnell*, 860 F. App'x 210, 212 (2d Cir. 2021) ("In addition, any claim against HSBC based on the November 2018 affirmation was properly dismissed because Walker failed to allege that HSBC was a debt collector within the meaning of the FDCPA."); *Estate of Egenious Coles v. Zucker, Goldberg & Ackerman*, 658 F. App'x 108, 111 (3d Cir. 2016) (affirming district court dismissal because "the complaint alleges, in a conclusory fashion, that the law firm is a 'debt collector' by quoting the relevant definition from the FDCPA"); *Davidson v. Capital One Bank (USA), N.A.*, 797 F.3d 1309, 1318 (11th Cir. 2015); *Ramsay v. Sawyer Property Mgmt. of Maryland LLC*, 593 F. App'x 204, 206 (4th Cir. 2014).

Wilkinson relies on *Rowlands v. United Parcel Service – Fort Wayne* for the proposition that plaintiffs are not required to plead "all legal elements (or factors) plus facts corresponding to each" to survive a motion to dismiss. 901 F.3d 792, 800 (7th Cir. 2018). The case is unpersuasive in this circumstance, however. For starters, *Rowlands* was not a FDCPA case, so the court was not considering what is required to be pled under that statute. Also, the Seventh Circuit found that the EEOC charge stated that the plaintiff had "tried to get reasonable accommodations," and so "it logically follows that those efforts were not fruitful." *Rowlands*, 901 F.3d at 799. Thus, it found that the plaintiff was not required to explicitly plead that her accommodations had been denied. In contrast, the facts Wilkinson alleged here do not lead to a similar inference. It does not "logically follow" that by placing a ticket

15

on a car and providing means to pay the ticket, Passport's principal purpose is debt collection. So the Court does not find Wilkinson's argument to be persuasive.

Further, even if Wilkinson had plausibly pled that Passport is a debt collector under the FDCPA, Passport would be exempted from liability because its alleged collection efforts involved a debt not in default. *See* 15 U.S.C. § 1692a(6)(F)(iii); *see Willison v. Nelnet, Inc.*, 850 F. App'x 389, 391 (6th Cir. 2021). In other words, the FDCPA does not apply to collection efforts by those who obtained the right to payment on the debt before the debt was in default. *See Franceschi v. Mautner-Glick Corp.*, 22 F. Supp. 2d 250, 252 (S.D.N.Y. 1998). The FDCPA does not define what "in default" means, and often, it is the parties themselves that dictate when debts are considered to be in default. *See Willison*, 850 F. App'x at 392 (analyzing loan agreement between parties to determine whether the defendant treated the loans as if they were in default when deciding if defendant was a debt collector). The parties have not given the Court guidance on this issue. Based on the language on the ticket, though, it appears the fine was to be paid in 14 days or the amount would double. (ECF No. 9-1, PageID.37.) So it is doubtful that the fine would be considered in "default" at the time Passport issued the ticket. *See Schroeder*, 2013 WL 5348472, at *13 ("Diamond Parking is also exempted from the FDCPA as an entity that had the right to collect payment on a debt before it went into default."). And Wilkinson filed this lawsuit just ten days after receiving the ticket, so arguably the ticket was not payable by the time this case was initiated. Thus, under the FDCPA, even if Passport was a debt collector,

16

it would be exempted from liability because it was not collecting on a debt that was in default.

In sum, Wilkinson has not alleged that the principal purpose of Passport's business is debt collection, so Wilkinson has not plausibly alleged that Passport is a debt collector. And even if he had, it is not plausible that the debt from the parking ticket was overdue, so Passport would be exempt from liability.

### B. Furnishing Deceptive Forms under the FDCPA

Wilkinson also alleges that Passport has violated a provision of the FDCPA for furnishing a deceptive form—namely, the parking tickets. Essentially, that provision prohibits indicating that a third person is involved with collecting a debt when they are not. More precisely, the provision states that "[i]t is unlawful to design, compile, and furnish any form knowing that such form would be used to create the false belief in a consumer that a person other than the creditor of such consumer is participating in the collection of or in an attempt to collect a debt such consumer allegedly owes such creditor, when in fact such person is not so participating." 15 U.S.C. § 1692j(a).

Passport argues that it cannot be liable under this provision because this provision only prohibits "flat-rating," which is when an entity sells dunning letters with its letterhead or name even though it is not actually participating in the debt-collection efforts ("Dunning" means to make persistent demands upon another for payment of a debt. So a dunning letter is a collection notice sent to a consumer that explains that a debt they owe is due). (*See* ECF No.13, PageID.58.) The Court agrees.

17

As explained by the Federal Trade Commission in its Statement of General Policy on the FDCPA, § 1692j(a) "only prohibits the practice of selling to creditors dunning letters that falsely imply a debt collector is participating in collection of the debt, when in fact only the creditor is collecting." *See* 53 Fed. Reg. 50,109 (1988); *Anthes v. Transworld Sys., Inc.*, 765 F. Supp. 162, 168 (D. Del. 1991). This practice is known as flat-rating and is used to "give delinquency letters added intimidation value, as it suggests that a collection agency or some other party is now on the debtor's back." *See Pass v. City of Columbus*, 748 F.Supp.2d 804, 813 (S.D. Ohio 2010); *see also Burns v. Ross Stuart & Dawson, Inc.*, No 16-10917, 2016 WL 7013007, at *4 (E.D. Mich. Dec. 1, 2016) ("In § 1692j, the FDCPA prohibits flat rating[.]"); *Sexton v. Bank of New York Mellon*, No 5:15-329-DCR, 2016 WL 4059186, at *5 (E.D. Ky. July 28, 2016) (finding 1692j "prohibits flat-rating, where an entity lends its name to a creditor for intimidation value in exchange for a 'flat' rate for the letter"). "Essentially, to prove a violation of the FDCPA for flat-rating, a plaintiff must show that the collection agency was not acting as a debt collector, but was merely providing its name or letterhead for collection purposes." *Hartley v. Suburban Radiologic Consultants, Ltd.*, 295 F.R.D. 357, 372 (D. Minn. 2013); *see also Echlin v. PeaceHealth*, 887 F.3d 967, 972 (9th Cir. 2018) ("Because a third-party flat-rater does not participate in the debt-collection process, it, in effect, simply allows the creditor to use it name for its intimidation value.").

Wilkinson has not pled facts sufficient to demonstrate that Passport provided its name or letterhead for collection purposes when it did not actually participate in

18

collecting. The ticket does not bear Passport's name or any indication that Passport, and not Olympia, is the entity collecting the parking fine (to the extent the ticket even purports to be collecting a debt). And Wilkinson does not even allege that he believed Passport to be the one collecting the debt, even though it was not in fact participating. Nor does Wilkinson allege that Passport sold its name or letterhead to Olympia Development of Michigan, the alleged creditor. *See Himmelfarb v. Nat'l Bureau Coll. Corp.*, No. 17-CV4744, 2018 WL 5456649, at *4 (E.D.N.Y. Sept. 28, 2018) ("Plaintiff fails to allege that Frosch sold her attorney letterhead to Maimonides, the creditor."). Even if the ticket falsely states that "Olympia Development Authority" is "collecting" on the parking debt, and it is plausible that this implies a third-party other than Olympia Development is "collecting,"[2] it does not implicate Passport. It is not Passport's name or letterhead that made any false impression. So Passport cannot be liable under 15 U.S.C. §1692j.

### III. Conclusion

For the foregoing reasons, Passport's motion to dismiss (ECF No. 13) is GRANTED.

SO ORDERED.

Dated: October 3, 2022

s/Laurie J. Michelson  
LAURIE J. MICHELSON  
UNITED STATES DISTRICT JUDGE

---

[2] The Court explains in its opinion on Olympia's motion to dismiss why it is not plausible that the ticket creates a false belief that a person other than the creditor is participating in the debt collection.

19