UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

MATTHEW WILKINSON,

    Plaintiff,

v.

OLYMPIA DEVELOPMENT OF
MICHIGAN LLC, ODM PARKING,
LLC, UNKNOWN OLYMPIA ENTRY
NO. 1, et al.,

    Defendants.

Case No. 22-10714
Honorable Laurie J. Michelson

**OPINION AND ORDER GRANTING OLYMPIA DEVELOPMENT OF MICHIGAN AND ODM PARKING'S MOTION TO DISMISS [14]**

Earlier this year, Matthew Wilkinson parked his car in downtown Detroit at the 215 W. Elizabeth Parking Lot. (ECF No. 9, PageID.28.) An attendant waved him into the lot and collected a $20 parking fee, and another attendant directed him into a spot. (*Id.*)

Once Wilkinson returned to his car, he found this parking ticket on the windshield:




(ECF No. 9-1, PageID.36.) As can be seen, it cited him for not having a permit to park in the lot. (*Id.*) The ticket assessed a "fine" of $50, which would increase to $100 if the ticket was not paid within 14 days. (*Id.*) On the back, the ticket stated that if it is paid by mail, it should be addressed to "Olympia Development Authority" located at 2211 Woodward Ave, Detroit, MI 48201. (ECF No. 9-1, PageID.37.) This address is the site of the Fox Theater and Little Caesars' corporate office. The back also lists a phone number and website that can be used to pay the ticket. (ECF No. 9-1, PageID.37.) Wilkinson says that Passport Labs created and issued the parking ticket he received and that it operated the payment collection website and phone number. (ECF No. 9, PageID.30.)

Wilkinson thinks the ticket is deceptive in a few ways. For one, the ticket says to send payments to "Olympia Development Authority," but, according to Wilkinson, "[t]here is no such entity formed, known, or existing as the 'Olympia Development Authority.'" (*Id.*) Wilkinson further alleges that Passport, Olympia Development of Michigan, and ODM Parking (or another unknown Olympia company) used the name "Olympia Development Authority" to give the false impression that a municipal, governmental, or law enforcement agency was issuing the tickets and that the tickets initiated legal process. (*Id.*) Wilkinson does not allege that he paid the parking ticket and has not alleged that anyone contacted him about the unpaid parking ticket after he received it.

By virtue of having received the ticket, Wilkinson filed this purported class action under the Fair Debt Collection Practices Act. He alleges that all defendants

2

violated the FDCPA's prohibition on using false, deceptive, or misleading representations (Count I) and its prohibition on using unfair or unconscionable means to collect a debt (Count II).

In response, Olympia Development of Michigan and ODM Parking (collectively "Olympia") moved to dismiss the complaint.[1] (ECF No. 13.) After reviewing the complaint, the Court also issued a show-cause order directing Wilkinson to explain why he has standing to bring this lawsuit. (ECF No. 21.)

Given the adequate briefing and relevant allegations, the Court considers the motion and the show-cause response without further argument. *See* E.D. Mich. LR 7.1(f). And for the reasons set forth below, the Court will GRANT the motion to dismiss.

## I. Standing

The Court begins, as it must, with subject-matter jurisdiction. *See Am. Telecom Co. v. Republic of Lebanon*, 501 F.3d 534, 537 (6th Cir. 2007) ("Subject matter jurisdiction is always a threshold determination.").

One of the essential requirements of subject-matter jurisdiction is standing. The Court is "obligated to address a party's lack of standing even if the parties fail to raise the issue on their own." *Langfan v. Goodyear Tire & Rubber Co.*, 529 F. App'x 460, 462 (6th Cir. 2013); *see also Donovan v. FirstCredit, Inc.*, 983 F.3d 246, 250 (6th Cir. 2020) ("It is well established that the court has an independent obligation to

---

[1] Passport Labs also moved to dismiss (ECF No. 13), which the Court will address in a separate opinion.

3

assure that standing exists." (quoting *Summers v. Earth Island Inst.*, 555 U.S. 488, 499 (2009))). Accordingly, the Court issued a show-cause order, which specifically questioned whether Wilkinson had pled a concrete injury. (ECF No. 21, PageID.180–181.)

Article III standing requires an injury that is concrete, particularized, and actual or imminent. *See Friends of the Earth, Inc. v. Laidlaw Env't. Servs.*, 528 U.S. 167, 180–81 (2000); *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560–61 (1992). The Supreme Court recently made clear that "Congress may create causes of action for plaintiffs to sue defendants who violate [certain] legal prohibitions or obligations. But under Article III, an injury in law is not an injury in fact." *TransUnion LLC v. Ramirez*, 141 S. Ct. 2190, 2205 (2021). "Only those plaintiffs who have been concretely harmed by a defendant's statutory violation may sue that private defendant over that violation in federal court." *Id.*

Wilkinson now argues, but did not plead, that the parking ticket he received caused him injury in the form of wasted time, "stress, fear, anger, and frustration." (ECF No. 22, PageID.188.) Wilkinson attaches a declaration similarly stating that the fine caused "distress, fear and frustration" and that he made "numerous" calls to resolve the ticket which "cost [him] important personal and professional time as to [his] family and work-breaks and caused [him] losses." (ECF No. 22-2, PageID.195.)

Both tangible and intangible injuries can be concrete, i.e., "real . . . not abstract[.]" *Garland v. Orlans, PC*, 999 F.3d 432, 436 (6th Cir. 2021). So Wilkinson is correct that he need not have suffered financial harm (from paying the ticket, for

4

example) to have standing. Where a plaintiff claims that a statutory violation resulted in a concrete intangible injury (as Wilkinson is now trying to do here), the Court should rely on congressional judgment and history to determine if the statutory violation rises to the level of a traditional legal harm. *See Ward v. Nat'l Patient Acct. Servs. Sols.*, 9 F.4th 357, 362 (6th Cir. 2021). This is true whether the plaintiff contends that the statutory violation itself is sufficient to establish a concrete intangible injury, or whether a concrete intangible injury "flowed from the statutory violation." *Id.* at 362–63; *see also Garland*, 999 F.3d at 436–37 ("When trying to determine whether an intangible injury qualifies, *Spokeo* says that we should look to history and congressional judgment."). No matter the theory, courts have warned that while Congress may elevate harms that existed in common law, "it may not simply enact an injury into existence, using its lawmaking power to transform something that is not remotely harmful into something that is." *Hagy v. Demers & Adams*, 882 F.3d 616, 622 (6th Cir. 2018).

Start with Wilkinson's argument that the alleged statutory violations themselves are a concrete injury because they have a close relationship to the traditional common-law injuries recognized by negligent or false misrepresentation claims. *See Garland*, 999 F.3d at 437. But Wilkinson's allegations here do not resemble "a harm traditionally regarded as providing a basis for a lawsuit." *See Ward*, 9 F.4th at 362 (citing *TransUnion LLC v. Ramirez*, 141 S. Ct. 2190, 2204 (2021)).

First, a necessary component of a misrepresentation claim is reliance. *Alfieri v. Bertorelli*, 813 N.W.2d 772, 775 (Mich. Ct. App. 2012). But Wilkinson did not

5

plausibly rely on any representation made on the ticket. He did not pay the fine nor did he plead anything else that would constitute reliance. So even if the ticket did suggest that Wilkinson violated parking ordinances or that he owed a fine under the law, he has not alleged any form of reliance on those representations. Thus, Wilkinson's alleged intangible harm does not have "a close relationship to a harm that has traditionally been regarded as providing a basis" for a false or negligent misrepresentation lawsuit. *See Garland*, 999 F.3d at 437.

Wilkinson also did not suffer pecuniary loss, which is the typical remedy for negligent or fraudulent misrepresentation. *See* Restatement (Second) of Torts § 549 ("The recipient of a fraudulent misrepresentation is entitled to recover as damages in an action of deceit against the maker the pecuniary loss to him of which the misrepresentation is a legal cause[.]"); *see also Ric-Man Construction, Inc. v. Neyer, Tiseo & Hindo Ltd.*, No. 329159, 2017 WL 188049, *5 (Mich. Ct. App. Jan. 17, 2017) (relying on the Restatement, which, in turn, provided that liability for negligent misrepresentation was for "pecuniary loss"). For that reason as well, Wilkinson does not plead a claim that has a close relationship to common-law injuries involving misrepresentation. *See Trichell v. Midland Credit Mgmt., Inc.*, 964 F.3d 990, 998 (11th Cir. 2020) ("By jettisoning the bedrock elements of reliance and damages, the plaintiffs assert claims with no relationship to harms traditionally remediable in American or English courts.").

Wilkinson also seems to argue that certain concrete injuries "flowed from the statutory injury." *See* Ward, 9 F.4th at 363. But Wilkinson's bare allegations of

6

"stress, fear, anger, and frustration" do not amount to a concrete injury. The Sixth Circuit has found that "[s]ome forms of anxiety or emotional harm are cognizable under the common law, but others are not. And this distinction appears to turn on both the defendant's conduct giving rise to the anxiety and the anxiety's severity." *Garland*, 999 F.3d at 440. Wilkinson notes that the common law has "long designated it a compensable injury when intentionally inflicting distress by extreme and outrageous conduct." (ECF No. 22, PageID.187.) But intentional infliction of emotional distress requires "extreme and outrageous" conduct which "describes a very small slice of human behavior." *See Garland*, 999 F.3d at 440 (quoting Restatement (Third) of Torts: Physical & Emotional Harm § 46 cmt. a). A "bare procedural violation," such as the one asserted by Wilkinson in his complaint, "does not fit on that small slice." *Id.*

In his amended complaint, Wilkinson merely describes the events leading up to him receiving the parking ticket, what the parking ticket said, and why he believes this violated the FDCPA. (ECF No. 9, PageID.28–30.) There is nothing detailing the harm he suffered apart from the FDCPA violation. And though his declaration states the parking ticket caused distress, fear, and frustration because he was "[b]eing falsely accused by what was thought to be a government agency to have broken the law to the point of being fined" and because the ticket "demanded . . . such a substantial amount of money combined with doubling penalty" (ECF No. 22-2, PageID.195), Wilkinson does not describe an injury that was caused by "extreme and outrageous" conduct. Simply put, placing a parking ticket on Wilkinson's windshield

7

(while he was not there) is not extreme and outrageous conduct even if the parking ticket was undeserved. The ticket cites no law and does not threaten any legal process. (ECF No. 9-1, PageID.36–38.) And even if the ticket did "falsely accuse" Wilkinson of breaking the law, Wilkinson makes no suggestion that the person who issued the ticket knew that or that such person *intentionally* inflicted any harm. Further, Wilkinson's description of his emotional harm "says nothing about severity." *See Garland*, 999 F.3d at 440. Thus, the harm caused to Wilkinson does not bear a close relationship to the harm that "has traditionally been regarded" as providing a basis for an intentional-infliction-of-emotional-distress claim. *See Garland*, 999 F.3d at 439. So Wilkinson's bare assertion of emotional harm does not rise to the level of a concrete injury.

True, in response to the show-cause order, Wilkinson says that he made "numerous" calls to resolve the ticket which "cost [him] important personal and professional time as to [his] family and work-breaks and caused [him] losses." (ECF No. 22-2, PageID.195.) And, arguably, the loss of time is an Article III injury. *Cf. Thomas v. TOMS King (Ohio), LLC*, 997 F.3d 629, 640 (6th Cir. 2021).

But even if Wilkinson could plead an Article III injury, to date he has not done so. He raises injuries in his declaration and briefs, but as the Court noted, "the amended complaint is devoid of any allegations describing consequences Wilkinson may have faced as a result of Defendants' actions or any actions Wilkinson took in response that could constitute 'concrete' and 'particularized' harm." (ECF No. 21, PageID.181.) To correct this deficiency, Wilkinson asks the Court to grant him leave

8

to again amend the complaint and add the injuries he describes in his declaration as allegations in his complaint. (ECF No. 22, PageID.191.)

The Court declines the invitation because granting leave to amend the complaint would be futile. Though perhaps Wilkinson could add allegations that amount to a concrete injury, the Court finds that Wilkinson would still fail to properly plead a claim against Olympia under the FDCPA. *See Banerjee v. Univ. of Tenn.*, 820 F. App'x 322, 329 (6th Cir. 2020) (finding that a motion to amend is futile "where a proposed amendment would not survive a motion to dismiss."). The Court explains why in detail below.

## II. 12(b)(6)

In deciding a motion to dismiss under Rule 12(b)(6), the Court "construes the complaint in the light most favorable" to Wilkinson and determines whether his "complaint 'contain[s] sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face.'" *Heinrich v. Waiting Angels Adoption Servs., Inc.*, 668 F.3d 393, 403 (6th Cir. 2012) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)). Detailed factual allegations are not required to survive a motion to dismiss, *HDC, LLC v. City of Ann Arbor*, 675 F.3d 608, 614 (6th Cir. 2012), but they must "raise a right to relief above the speculative level," *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007). What is plausible is "a context-specific task" requiring this Court "to draw on its judicial experience and common sense." *Iqbal*, 556 U.S. at 679.

## A. Debt Collector under the FDCPA

Wilkinson's first two FDCPA claims only apply to debt collectors. More specifically, he brings claims under 15 U.S.C. § 1692e, which states "[a] debt collector may not use any false, deceptive, or misleading representation or means in connection with the collection of any debt[,]" and § 1692f, which states "[a] debt collector may not use unfair or unconscionable means to collect or attempt to collect any debt." Thus, to state a claim under either provision, Wilkinson must plead that the Olympia entities are "debt collector[s]" as defined by the FDCPA. *See White v. Univ. Fidelity, LP*, 793 F. App'x 389, 391 (6th Cir. 2019) ("To prevail on his FDCPA claim, White must establish that . . . Universal Fidelity and Link Revenue are 'debt collectors' as defined by the FDCPA[.]").

Wilkinson apparently concedes that Olympia is a creditor and not a debt collector. Typically, creditors (i.e., entities to which debts are owed) are not covered by the FDCPA. *Washington v. Weinberg Mediation Grp., LLC*, 468 F.Supp.3d 966, 968 (N.D. Ohio 2020) (citing *Montgomery v. Huntington Bank*, 346 F.3d 693, 698 (6th Cir. 2003)). However, Wilkinson asserts that the Olympia entities fall under the "false name" exception in the FDCPA.

This exception provides that the definition of a "debt collector" in the FDCPA includes "any creditor who, in the process of collecting his own debts, uses any name other than his own which would indicate that a third person is collecting or attempting to collect such debts." 15 U.S.C. § 1692a(6). So if a creditor "pretends to be someone else or uses a pseudonym or alias," it could be liable under the FDCPA.

10

*Lorenz v. GE Cap. Retail Bank*, 944 F.Supp.2d 220, 225 (E.D.N.Y. 2013). The rationale behind this exception was that, typically, a creditor would not risk its reputation by engaging in harassing debt-collection practices. But if it used a false name, then it could do so without fearing such consequences. *See O'Rourke v. Am. Exp. Co., Inc.*, No. 10-14374, 2011 WL 2711086, at *2 (E.D. Mich. June 9, 2011) (citing *Sokolski v. Trans Union Corp.*, 53 F.Supp.2d 307, 312 (E.D.N.Y. 1999)).

When determining whether this exception applies, courts use the "least sophisticated consumer" standard. *See Pinson v. JPMorgan Chase Bank, Nat'l Assoc.*, 942 F.3d 1200, 1209 (11th Cir. 2019) ("We now join the Second and Seventh Circuits and hold that the false-name exception applies when the 'least sophisticated consumer' would believe a third party was involved in collecting a debt." (citing *Catencamp v. Cendant Timeshare Resort Grp.-Consumer Fin., Inc.*, 471 F.3d 780, 782 (7th Cir. 2006); *Maguire v. Citicorp Retail Servs., Inc.*, 147 F.3d 232, 236 (2d. Cir. 1998))). Though the Sixth Circuit has not explicitly adopted the 'least sophisticated consumer' standard in this context, it has stated that "[c]ourts use the 'least sophisticated consumer' standard, an objective test, when assessing whether particular conduct violates the FDCPA." *See Cagayat v. United Coll. Bureau, Inc.*, 952 F.3d 749, 756 (6th Cir. 2020). "This standard recognizes that the FDCPA protects the gullible and the shrewd alike while simultaneously presuming a basic level of reasonableness and understanding on the part of the debtor, thus preventing liability for bizarre or idiosyncratic interpretations of debt collection notices." *Id.*

So applying these standards, Wilkinson must plausibly have pled that the least sophisticated consumer, having read that payment should be mailed to "Olympia Development Authority," would believe that a third party distinct from Olympia Development of Michigan or ODM Parking was attempting to collect on his parking "debt." He has not.

As an initial matter, the ticket lists "OLYMPIA DEVELOPMENT" in capital letters at the top of the ticket, so even the least sophisticated recipient would immediately recognize that it is from Olympia. And it is widely held that a creditor need not use its full name of incorporation to avoid FDCPA coverage—the name which it usually transacts business or a well-recognized acronym is sufficient. *See Maguire v. Citicorp Retail Servs, Inc.*, 147 F.3d 232, 235 (2d Cir. 1998). Olympia's prominent identification on the top of the ticket meets this standard. Its use of its own name also cuts against the reasoning behind applying the FDCPA to creditors in limited circumstances. As mentioned, Congress recognized that "where a creditor uses a false name to collect its own debts it may abandon restraint—the creditor can hide behind a pseudonym and harass its delinquent customers without suffering the reputation-related consequences." *O'Rourke v. Am. Exp. Co., Inc.*, No. 10-14374, 2011 WL 2711086, at *2 (E.D. Mich. June 9, 2011) (citing *Sokolski v. Trans Union Corp.*, 53 F.Supp.2d 307, 312 (E.D.N.Y. 1999)). "Olympia Development" is clearly identified as the source of the ticket, so it would not be shielded from these consequences.

Wilkinson, however, focuses on the back of the ticket, which states that payment, if mailed, should be addressed to "Olympia Development Authority" rather

12

than the alleged creditor's real name "Olympia Development of Michigan." But the addition of the word "authority" would not deceive the least sophisticated consumer into believing that a third party, as opposed to Olympia, was collecting on the parking debt. To conclude otherwise would mean that the least sophisticated consumer in this context would ignore the "Olympia Development" part of the name and focus almost entirely on "authority." At its core, it would mean that the least sophisticated consumer would not associate "Olympia Development Authority" with "Olympia Development of Michigan." This amounts to a "bizarre or idiosyncratic" interpretation of the parking ticket, and thus the Court finds that Wilkinson's allegations do not plausibly show that Olympia used a "false name," i.e., a name other than its own that would indicate that a third party was collecting on its debts.

Many courts have likewise concluded that such a similarity between the creditor's actual name and its alleged "false name" is insufficient as a matter of law to trigger the false name exception. In *Pinson*, the Eleventh Circuit held that the complaint had not plausibly alleged that the false name exception applied when JP Morgan Chase used "Chase Home Finance" on a credit report. 942 F.3d at 1210 ("The word 'Chase' in Chase Home Finance echoes the name JP Morgan Chase, the holder of Mr. Pinson's mortgage."); *see also Burns v. Bank of Am.*, 655 F.Supp.2d 240, 254 (S.D.N.Y. 2008) ("Even the least sophisticated consumer would be able to determine from cursory review of the correspondence from Bank of America Mortgage to Plaintiffs that Bank of America Mortgage is related to Bank of America." *aff'd*, 360 F. App'x 255 (2d Cir. 2010)); *Young v. Lehigh Corp.*, No. 80 C 4376, 1989 WL 117960,

13

at *22 (N.D. Ill. Sept. 28, 1989) ("How the plaintiff (or anyone else, for that matter) could have been duped into believing that Lehigh Corporation was not affiliated with Lehigh Country Club, Inc. is a mystery. Accordingly, the plaintiff has no cause of action against Lehigh under the FDCPA."). *Cf. Maguire v. Citicorp Retail Servs., Inc.*, 147 F.3d 232, 236–37 (2d Cir. 1998) (analyzing whether "Debtor Assistance" was a false name for Citicorp and finding that "this is not a situation where the relatedness of the two entities would be apparent from the similarity of the creditor's and its affiliate's name"); *Catencamp v. Cendant Timeshare Resort Group-Consumer Finance, Inc.*, 471 F.3d 780, 782 (7th Cir. 2006) ("Catencamp's situation likewise is governed by the norm that unsophisticated readers do not see through acronyms when the creditor's full name is missing.").

Perhaps Wilkson's real gripe is that before he saw the ticket, he had no reason to think a fine for parking in the lot would be owed to Olympia. But that is a distinct scenario from one where Olympia misled Wilkinson into thinking that an unrelated third-party was attempting to collect the parking fine. *See A.W. v. Preferred Platinum Plan, Inc.*, 923 F.Supp.2d 1168, 1171–72 (D. Minn. 2013) ("Nothing has been pleaded suggesting [plaintiff] believed or was told he was incurring a debt to one company but then was contacted by another company. At most, the Complaint alleges that [plaintiff] *simply didn't know* the entity to which he incurred the debt[.]"). Here, Wilkinson may not have known he incurred a "debt" to Olympia, but the only plausible interpretation of the ticket is that Olympia is collecting the fine. The false name exception does not cover this scenario.

14

In short, because Wilkinson concedes that Olympia is a creditor, and because Wilkinson has not plausibly alleged that the least sophisticated consumer would have thought that "Olympia Development Authority" meant that a third party was attempting to collect, Wilkinson has not plausibly alleged that Olympia is a "debt collector" as that term is used in the FDCPA.

In its briefing, Olympia relies on a different exception to argue that it is not a debt collector. Oversimplifying a bit, that provision exempts from the term "debt collector" a company that collects debts for related or affiliate companies (so long as the company's principal business is not debt collection). *See* 15 U.S.C. § 1692a(6)(B). In response, Wilkinson argues that Olympia Development Authority is not an entity that legally exists, so it cannot actually be related to or affiliated with any Olympia entity.

The Court need not address this dispute. Wilkinson's allegations fail at the threshold inquiry of whether Olympia is a debt collector at all. Thus, the Court does not need to undertake the secondary inquiry of whether a statutory exception to the definition of debt collector applies.

One final note. Wilkinson's general theory seems to be that Olympia, by issuing parking tickets that look like municipal parking tickets, deceived consumers into thinking that Olympia had legal or statutory authority to do so. That practice may be illegal under other laws. But the FDCPA inquiry before this Court is a different, much narrower one—whether Olympia is a debt collector as defined by that statute. For the reasons given, it is not, and thus these claims may not survive under the FDCPA.

### III. Conclusion

Because Wilkinson has not plausibly alleged that the Olympia Defendants are debt collectors as defined by the FDCPA, their motion to dismiss (ECF No. 14) is GRANTED.

SO ORDERED.

Dated: October 3, 2022

s/Laurie J. Michelson
LAURIE J. MICHELSON
UNITED STATES DISTRICT JUDGE
